# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ANTHONY DIPIPPA,
    *Plaintiff*,

No. 3:19-CV-01386 (KAD)

v.

FULBROOK CAPITAL MGMT. LLC,
SELVYN SEIDEL,
    *Defendants.*

April 22, 2020

## MEMORANDUM OF DECISION RE:
## PLAINTIFF'S AMENDED MOTION FOR ATTORNEY'S FEES (ECF NO. 111)

Kari A. Dooley, United States District Judge:

    Plaintiff Anthony Dipippa ("Mr. Dipippa" or the "Plaintiff") moves for an award of costs and attorney's fees to be assessed against non-appearing Defendant Fulbrook Capital Management LLC ("Fulbrook") and *pro se* Defendant Selvyn Seidel ("Mr. Seidel" and, collectively, the "Defendants") in the amount of $50,577.35, principally pursuant to a secured promissory note and security agreement executed by Mr. Seidel on behalf of Fulbrook. (ECF No. 111.) Mr. Seidel did not file an opposition to the Plaintiff's motion and the time within which to do so has passed. For the reasons that follow, the Plaintiff's motion for costs and attorney's fees is GRANTED in part and Plaintiff is awarded $29,057.70 in attorney's fees and $2,147.85 in costs. The Court also DENIES Mr. Seidel's motion for discovery (ECF No. 80) filed in connection with Plaintiff's initial motion for attorney's fees.[1]

---

[1] The Plaintiff first filed a motion for attorney's fees on October 16, 2019 (ECF No. 77), which the Court denied without prejudice due to the Plaintiff's failure to submit a supporting memorandum of law as required by Local Rule 7(a)(1). (ECF No. 105.) In connection with the Plaintiff's initial motion, Mr. Seidel filed his own motion, styled a motion for discovery (ECF No. 80, 80-1), in which he sought a Court order requiring Mr. Dipippa to produce the invoices for the attorney's fees, information concerning the amounts paid and identity of the payors of those invoices, and the engagement letter between Mr. Dipippa and Attorney Houston Putnam Lowry's firm. Because Attorney Lowry has submitted an affidavit and accompanying billing summary to enable the Court to assess the reasonableness

**Background**

On October 16, 2018, Mr. Dipippa obtained an arbitration award against the Defendants for the sum of $424,423.39 plus $186,746.29 in interest, as well reasonable attorney's fees and expenses in the amount of $16,632.25.  (Pl.'s Ex. 3 at 1.)  On January 30, 2019, the United States District Court for the Southern District of New York granted default judgment in favor of Mr. Dipippa against the Defendants, confirming the arbitration award and awarding $2,500.00 in additional attorney's fees to Mr. Dipippa for bringing that proceeding.  (ECF No. 1-1.)  Having registered the judgment in this Court, Mr. Dipippa now seeks further attorney's fees and costs totaling $50,577.35.  He attaches a promissory note (Pl.'s Ex. 1) and security agreement (Pl.'s Ex. 2) executed by Mr. Seidel on behalf of Fulbrook regarding the $424,423.39 loan extended by Mr. Dipippa to Fulbrook and personally guaranteed by Mr. Seidel, which were the source of the liabilities giving rise to the underlying arbitration award and judgment.

A review of these documents reveals that the Plaintiff is entitled to an award of attorney's fees and costs incurred in connection with proceedings undertaken to enforce Mr. Dipippa's rights under the agreements.  (Promissory Note ¶ C.2; Security Agreement ¶¶ 2, 6.).  Mr. Seidel has made no argument to the contrary and in fact, although he did not file a response to the instant motion, he earlier represented his agreement to pay the Plaintiff's attorney's fees in connection with the earlier filed motion seeking such fees.  (*See* Seidel Aff. ¶¶ 4–5, ECF No. 80-2.)

**Discussion**

The instant proceeding was initiated by Mr. Dipippa to obtain post-judgment discovery from the Defendants in order to enable Mr. Dipippa to collect the underlying judgment entered against the Defendants in the Southern District of New York.  The Court finds, as an initial matter,

---

of the requested attorney's fees, as discussed *infra*, the Plaintiff is not required to produce any additional information to substantiate his entitlement to attorney's fees.  Mr. Seidel's motion is accordingly denied.

that the attorney's fees and costs incurred in this proceeding were undertaken to enforce Mr.

Dipippa's rights under the promissory note and security agreement and accordingly fall within the

plain language of those agreements.[2]

"In calculating attorney's fees, the district court must first determine the 'lodestar—the

product of a reasonable hourly rate and the reasonable number of hours required by the case—

[which] creates a presumptively reasonable fee.'"[3]  *Stanczyk v. City of New York*, 752 F.3d 273,

284 (2d Cir. 2014) (quoting *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)).

The "lodestar" should be consistent with the rates "for similar services by lawyers of reasonably

comparable skill, experience, and reputation" in the "prevailing community," which is defined by

reference to "the district in which the court sits."  *Sony Elecs., Inc. v. Soundview Techs., Inc*, 389

F. Supp. 2d 443, 447 (D. Conn. 2005) (quotation marks and citations omitted). "It is well

established that if claimed hours appear excessive, redundant, or otherwise unnecessary, the court

should reduce the award accordingly.'"  *Id.* at 449 (quotation marks and citation omitted).  "There

---

[2] Mr. Dipippa also cites the sanctions permitted by Fed. R. Civ. P. 37 as well as Conn. Gen. Stat. § 52-400c, which provides that "[i]n the discretion of the court, a reasonable attorney's fee may be allowed to the prevailing party" under several specific circumstances. Because the Court concludes that Mr. Dipippa's entitlement to attorney's fees is established from the face of the promissory note and security agreement, the Court does not decide whether he is entitled to an award of attorney's fees under Rule 37 or whether he has satisfied the § 52-400c statutory requirements.

[3] The Plaintiff argues that the Court need not ascertain whether the attorney's fees are reasonable because some of the applicable contractual provisions do not use the qualifying word "reasonable," citing the Connecticut Supreme Court's decision in *Storm Assocs., Inc. v. Baumgold*, 186 Conn. 237, 246, 440 A.2d 306 (1982).  However, both the promissory note and security agreement contain choice of law provisions specifying that the agreements are to be interpreted under New York law.  (Promissory Note ¶ C.4; Security Agreement ¶ 23).  Because the promissory note specifically requires the Defendants to "pay the *reasonable* fees and disbursements of counsel to Lender in connection with the enforcement of Lender's rights hereunder," (Promissory Note ¶ C.2 (emphasis added)) and because specific contractual provisions govern general ones in the face of an inconsistency, *see Muzak Corp. v. Hotel Taft Corp.*, 1 N.Y.2d 42, 46, 133 N.E.2d 688 (1956), the Court will apply the more specific provision requiring that the attorney's fees be reasonable.  Moreover, "even when contracts provide for the recovery of 'all attorneys' fees', courts in this Circuit evaluate the reasonableness of fee reimbursement requests."  *Sidley Holding Corp. v. Ruderman*, No. 08-CV-2513 (WHP) (MHD), 2009 WL 6047187, at *16 (S.D.N.Y. Dec. 30, 2009), *report and recommendation adopted*, 2010 WL 963416 (S.D.N.Y. Mar. 15, 2010); *see also Weiwei Gao v. Sidhu*, No. 11-CV-2711 (WHP) (JCF), 2013 WL 2896995, at *5 (S.D.N.Y. June 13, 2013) ("Under New York law, a contract provision that one party to a contract pay the other party's attorneys' fees in the event of breach is enforceable 'so long as those amounts are not unreasonable.'") (quoting *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1263 (2d Cir. 1987)).

is no precise rule or formula for making these determinations, and, because 'it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application,' a court may apply an across-the-board percentage cut 'as a practical means of trimming fat from a fee application.'" *Rivera v. Corp. Receivables, Inc.*, 540 F. Supp. 2d 329, 338 (D. Conn. 2008) (quoting *New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)).

After calculating the lodestar, the Court may consider other factors which might counsel either an upward or downward adjustment, to include the 12 *Hensley* factors:

> (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Doe v. Bridgeport Police Dep't*, 468 F. Supp. 2d 333, 338 (D. Conn. 2006) (quotation marks, alterations, and citations omitted).

The Court notes as an initial matter that the Plaintiff's request for $50,577.35 in costs and attorney's fees is quite extraordinary and is more than triple the value of attorney's fees awarded in the underlying arbitration action itself.  Mr. Dipippa acknowledges that "[w]hile there were 110 docket entries" in this case, "it normally should have taken 10 to obtain the required information," and that "[t]he additional work was required by Defendants' intransience[sic] because Defendants want to conceal their assets so Plaintiff will not be paid."  (Pl.'s Mot. at 9.)  Indeed, Mr. Seidel has undoubtedly driven up the Plaintiff's attorneys' fees through his own conduct—which has included filing several frivolous motions, failing to comply with the Plaintiff's discovery requests, and refusing to submit to a deposition in contravention of this Court's orders, all of which has

required significant court intervention.  Mindful of these dynamics, the Court turns to the issues at hand.

Attorney Lowry submitted an affidavit averring that through October 14, 2019, his law firm, Polivy, Lowry & Clayton, LLC, has dedicated a total of 160.40 hours of attorney and staff time to this collection matter.  (Lowry Decl. ¶ 7a, ECF No. 111-2.)  The Plaintiff seeks $2,407.85 for costs expended as of that date, as well as $48,429.50 in attorney's fees.  The latter sum derives from a rate of $115.00/hour for paralegal time and $350/hour for Attorney Lowry's time, which reflects a $50/hour discount from Attorney Lowry's usual rate of $400/hour.  (*Id.* ¶¶ 6–7a, 7e.)  Also included in the total attorney's fees are 6.2 billable hours for Attorney Dale Clayton at the rate of $250/hour.  (*Id.* ¶ 7a.)

In the Court's view, these rates are reasonable.  *See, e.g.*, *Negron v. Patriot Auto Sales, LLC*, No. 3:17-CV-583 (JCH), 2019 WL 4463440, at *4 (D. Conn. Sept. 17, 2019) (concluding that $150/hour rate for a paralegal is appropriate); *Cadena v. A-E Contracting, LLC*, No. 3:08-CV-574 (HBF) (WWE), 2016 WL 3676093, at *3 (D. Conn. July 7, 2016) (Recommended Ruling) (determining, in 2016, that $375/hour constituted a reasonable fee for plaintiffs' counsel considering, *inter alia*, the difficulty of collecting the judgment from the defendant).  Moreover, as Plaintiff notes in his brief, in another action in this District to confirm an arbitration award, Chief Judge Underhill awarded attorney's fees to the plaintiff, which was based upon an hourly rate of $400/hour for Attorney Lowry.  *See* Order, *EW Oil SP. Z.O.O. v. Black Diamond Int'l Forest Group, LLC et al* ("*EW Oil*"), No. 3:17-CV-00978 (SRU) (ECF No. 24) (D. Conn. Aug. 31, 2017); *see also* Aff. of Attorney's Fees ¶ 6, *EW Oil* (ECF No. 19-1) (D. Conn. Aug. 16, 2017).

However, the Court does not find the number of hours billed to be entirely reasonable for a number of reasons.  First, the billing summary attached to Attorney Lowry's affidavit includes

several entries for which the length of time expended appears disproportionate to the complexity of the corresponding task or to the overly brief description of work performed.  By way of example only, the first entry reflects $536.19 billed for a 1.7-hour phone call on March 7, 2019 between Attorney Lowry and Attorney Polon, who served as counsel to Mr. Dipippa in the Southern District of New York proceeding, regarding "registering SDNY judgment," a task which is not generally complicated.  (Lowry Aff. Ex. A at 1, ECF No. 111-2.)  One week later, on March 14, 2.9 hours were billed for e-mails to Attorney Polon regarding "status and availability" and "recording of lien." (*Id*.)  Sending an email certainly does not take almost three hours, regardless of the subject matter, and to the extent the time was billed for recording a lien, this too is not a complex task.  The same is true with respect to, *inter alia*, 1.7 hours spent drafting a "long e-mail to all counsel re: execution strategy" resulting in $595.00 of billed attorney time on October 9, 2019.  (*Id.* at 6.) The billing summary also includes hours billed for multiple ministerial tasks performed by Attorney Lowry that could have been undertaken by a paralegal or administrative assistant—such as multiple phone calls to chambers, the Clerk's office, and to the courtroom deputy concerning status updates and filing issues, and various phone calls and e-mails to marshals concerning the service of executions.  *See, e.g.*, *Edwards v. Cornell*, No. 3:13-CV-878 (WIG), 2018 WL 3381296, at *3 (D. Conn. July 11, 2018) (reducing amount of attorney's fees for entries that billed attorney time for clerical work).

In addition, by all indicators, neither Mr. Seidel nor Fulbrook has any assets with which to satisfy the underlying judgment.  The record includes representations that Mr. Seidel's home is in foreclosure, that he is the subject of significant IRS liens, and that his personal and business bank accounts are all but empty.  Efforts to identify third parties who might now, or in the future, be under contractual obligation to make payments to either Fulbrook or Mr. Seidel have been largely

unproductive as far as the Court is aware.  Further, when the Court convened contempt proceedings against Mr. Seidel, the Court determined that he qualified for the appointment of CJA counsel and appointed counsel for him.  While the Court cannot say with any certainty based upon this record alone that Mr. Seidel and Fulbrook are or will continue to be judgment-proof, the Court is reminded of the oft cited idiom, "you can't get blood from a stone."[4]

This grim financial reality calls into question both the efficacy of the collection efforts and by extension the reasonableness of the significant attorney time dedicated to these efforts. Accordingly, the Court finds under the circumstances of this case that certain of the "claimed hours appear excessive, redundant, or otherwise unnecessary," *Sony Elecs.*, 389 F. Supp. 2d at 449 (quotation marks omitted).  The Court therefore applies an across-the-board 40% reduction to the requested award of $48,429.50—resulting in an award of $29,057.70 in attorney's fees.[5]  The Court also awards Mr. Dipippa his costs in litigating this action, which equal $2,407.85, minus the $260.00 in costs previously paid by the Defendants—resulting in a total award of $2,147.85 in costs.  The Court therefore orders that the Defendants remit to the Plaintiff the attorney's fees of $29,057.70 and $2,147.85 in costs—for a combined award of $31,205.55, which is due and payable immediately.

---

[4] This phrase is "[f]requently used, as a resigned admission, to mean that it is hopeless to try extorting money, etc., from those who have none."  Its first reference is attributed to J. Lydgate's *Minor Poems* in 1435: "Harde to likke hony out of a marbil stoon, For there is nouthir licour nor moisture."  John Simpson, A DICTIONARY OF PROVERBS (Jennifer Speake, ed., 2008), available at https://www.google.com/books/edition/_/ogm0c8mYtQUC?hl=en.

[5] The Court has considered the *Hensley* factors and does not further adjust the award because the factors are either already taken into account in the Court's lodestar calculation, or otherwise do not counsel further adjustment.

**Conclusion**

For the foregoing reasons, the Plaintiff's renewed motion for attorney's fees is granted in part.  With the Plaintiff's contempt motion having been resolved and with no other motions outstanding, the Clerk of Court is directed to close this matter.

**SO ORDERED** at Bridgeport, Connecticut, this 22nd day of April 2020.


*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE